**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION, | ) ) ) | |
| | ) | Case No. 2:23-cv-03023-KNS |
| Plaintiff, | ) | |
| v. | ) ) | |
| AZIM TRANSPORTATION, INC. AND AZIM MURADOV | ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF RONALD S. CANTER, PURSUANT TO 28 U.S.C § 1746,**
**IN SUPPORT OF PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT**

I, Ronald S. Canter, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an attorney licensed in the United States District Court for the Eastern District of Pennsylvania.

2.     I am attorney for Plaintiff U.S. Bank National Association ("Plaintiff") in the above-captioned action and make this Declaration in support of Plaintiff's request that the Clerk of the Court enter default against each of defendants Azim Transportation Inc. f/k/a Azim Trans Inc., and Azim Muradov (collectively, the "Defendants").

3.     As set forth in the Declaration of Service attached hereto as **Exhibit A**, Defendants were served with a copy of Summons in a Civil Action and Verified Complaint with Exhibits ("Complaint") via Certified Mailings, U.S.P.S. Regular Mail, Posting, and Publication.

4.     Pursuant to the Court Order dated January 5, 2024, Plaintiff effectuated service on Defendants by publication. A Copy of the proof of publication from *the Bucks County Courier Times* on February 1, 2024 is attached hereto as **Exhibit 8**. A Copy of the proof of publication from *Bucks County Law Reporter* on February 8, 2024 is attached hereto as

1

**Exhibit 9**.

5.      Federal Rules of Civil Procedure, Rule 12(a)(1)(A), requires a Defendant to serve a responsive pleading within twenty-one (21) days after service of the Summons and Complaint.

6.      The time within which Defendants may answer or otherwise move as to the Complaint expired on February 29, 2024.

7.      Defendants have not answered or otherwise moved and the time to answer or otherwise move has not been extended.

8.      For the foregoing reasons, Plaintiff respectfully requests that the Clerk of the Court enter default against each of the Defendants.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.




                                        _/s/ Ronald S. Canter_____
                                        Ronald S. Canter

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION, | ) ) ) | |
| | ) | Case No. 2:23-cv-03023-KNS |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| AZIM TRANSPORTATION, INC. AND AZIM MURADOV | ) ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF SERVICE

I, Ronald S. Canter, do hereby declare as follows:

1.  I am over the age of 18 years old and competent to make this affidavit. I do hereby affirm under penalty of perjury that the assertions of this Declaration are true.

2.  I am an attorney at the Law Offices of Ronald S. Canter LLC, which represents Plaintiff U.S. Bank Equipment Finance ("Plaintiff") in this action.

3.  I make this Declaration of Service in compliance pursuant to the Court's Order entered on January 5, 2024 [ECF No. 8] granting Plaintiff's Motion for a Second Extension of Time to Serve Defendant (the "Order").

### Certified Mailings

4.  On January 10, 2024, I mailed a copy of the Order, Complaint with Exhibits, and Summons via Certified Mail to Azim Muradov ("Muradov") at 530 Jason Drive, Southampton, PA 18966, tracking number: 9589071052701485899728 (the "Muradov Certified Mail"). A copy of the Muradov Certified Mail receipt is attached hereto as **Exhibit 1**.

5.  The USPS Tracking indicates that the Muradov Certified Mailing was attempted for

delivery on January 12, 2024 and was forwarded on the same date. A copy of the USPS tracking for the Muradov Certified Mail is attached hereto as **Exhibit 2**.

6. On January 10, 2024, I mailed a copy of the Order, Complaint with Exhibits, and Summons via Certified Mail to Azim Transportation f/k/a Azim Trans Inc. ("Azim Transportation") at 530 Jason Drive, Southampton, PA 18966, tracking number: 9589071052701485899735 (the "Azim Transportation Certified Mailing"). A copy of the Azim Transportation Certified Mailing receipt is attached hereto as **Exhibit 3**.

7. The USPS Tracking indicates that the Azim Transportation Certified Mailing was attempted for delivery on January 12, 2024 and was forwarded on the same date. A copy of the USPS tracking for the Muradov Certified Mail is attached hereto as **Exhibit 4**.

8. On January 16, 2024, both Muradov Certified Mail and Azim Transportation Certified Mailing were returned to my office.

<u>U.S.P.S Regular Mail</u>

9. On January 10, 2024, my intention was to mail copies of the Order, Complaint with Exhibits, and Summons to both Defendants at 530 Jason Drive, Southampton, PA 18966 via U.S.P.S. Regular Mail. However, due to an oversight, both mails were mistakenly sent solely to Azim Transportation, instead of one to Muradov and the other to Azim Transportation. The address for the Defendants is the same, and both mails were subsequently returned with the notation "RETURN TO SENDER UNABLE TO FORWARD." On February 2, 2024, one of the regular mails was returned to my office. A copy of the returned envelope is attached hereto as **Exhibit 5**. On February 15, 2024, the other regular mail was returned to my office. A copy of the returned envelope is

attached hereto as **Exhibit 6**.

<u>Posting</u>

10.     On January 11, 2024, Process Server Glenn DePretis posted a copy of the Order, Summons, and Complaint with Exhibits, at 530 Jason Drive, Southampton, Pennsylvania 18966. True and correct copies of the Process Server's Affidavit of Posting are attached hereto as **Exhibit 7**.

<u>Publication</u>

11.     On February 1, 2024, legal notice of the Complaint was published in *the Bucks County Courier Times*. A copy of the proof of publication from *the Bucks County Courier Times* is attached hereto as **Exhibit 8**.

12.     On February 8, 2024, legal notice of the Complaint was published in *the Bucks County Law Reporter*. A copy of the proof of publication from *the Bucks County Law Reporter* is attached hereto as **Exhibit 9**.


I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.


Executed on March 6th, 2024


*/s/ Ronald S. Canter*
Ronald S. Canter

# Exhibit 1

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage

$ $10.45

Total Postage and Fees

$

Sent To   Azim  Muradov

Street and Apt. No.   530 Jason Drive

City, State, ZIP+4®   Southampton, PA 18966

Postmark Here

ROCK...
MAIN OF...

JAN 2024

ROCKVILLE MD 208...
01/10/2024

PS Form 3800, January 2023 PSN 7530-02-000-9047          See Reverse for Instructions

# Exhibit 2

Tracking Number:

**95890710527014858997728**

☐ Copy   ⚡ Add to Informed Delivery

## Latest Update

Your item has been delivered to the original sender at 12:40 pm on January 16, 2024 in ROCKVILLE, MD 20850.

Get More Out of USPS Tracking:

🔍 USPS Tracking Plus®

---

**Delivered**

**Delivered, To Original Sender**
ROCKVILLE, MD 20850
January 16, 2024, 12:40 pm

**Out for Delivery**
ROCKVILLE, MD 20850
January 16, 2024, 6:10 am

**Arrived at Post Office**
ROCKVILLE, MD 20850
January 16, 2024, 5:57 am

**In Transit to Next Facility**
January 15, 2024

**Moved, Left no Address**
SOUTHAMPTON, PA 18966
January 12, 2024, 2:28 pm

**Forwarded**
SOUTHAMPTON, PA
January 12, 2024, 8:11 am

**Arrived at USPS Regional Origin Facility**
GAITHERSBURG MD DISTRIBUTION CENTER
January 10, 2024, 9:49 pm

**Departed Post Office**
ROCKVILLE, MD 20850
January 10, 2024, 5:18 pm

# Exhibit 3



UNITED STATES POSTAL SERVICE

Certificate Of

This Certificate
This form may

From:

U.S. POSTAGE PAID
FCM LG ENV
ROCKVILLE, MD
20850
JAN 10, 24
AMOUNT
**$1.95**
R2304M113974-22

To:

Azim Transportation Inc

Postmark Here

PS Form **3817**, April 2007  PSN 7530-02-000-9065

This Certificate of
This form may be u

From:

U.S. POSTAGE PAID
FCM LG ENV
ROCKVILLE, MD
20850
JAN 10, 24
AMOUNT
**$1.95**
R2304M113974-22

To: Azim Transportation INC
530 Jason DR
Southampton PA 18966

Postmark Here

PS Form **3817**, April 2007  PSN 7530-02-000-9065

9589 0710 5270 1485 8997 35

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

Certified Mail Fee $4.35

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage $2.55

Sent To Azim Transportation Inc

Street and Apt. No. 530 Jason Drive

City, State, ZIP+4 Southampton, PA 18966

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage $

Total Postage and Fees $10.65

Sent To Azim Muradov

Street and Apt. No. 530 Jason Drive

City, State, ZIP+4 Southampton, PA 18966

PS Form **3800**, January 2023     See Reverse for Instructions

9589 0710 5270 1485 8997 28

# Exhibit 4

## Delivered

**Delivered, To Original Sender**
ROCKVILLE, MD 20850
January 16, 2024, 12:40 pm

**Out for Delivery**
ROCKVILLE, MD 20850
January 16, 2024, 6:10 am

**Arrived at Post Office**
ROCKVILLE, MD 20850
January 16, 2024, 5:57 am

**In Transit to Next Facility**
January 15, 2024

**Moved, Left no Address**
SOUTHAMPTON, PA 18966
January 12, 2024, 2:28 pm

**Arrived at USPS Regional Origin Facility**
GAITHERSBURG MD DISTRIBUTION CENTER
January 10, 2024, 9:49 pm

**Departed Post Office**
ROCKVILLE, MD 20850
January 10, 2024, 5:18 pm

**USPS in possession of item**
ROCKVILLE, MD 20850
January 10, 2024, 4:10 pm

Hide Tracking History

## Latest Update

Your item has been delivered to the original sender at 12:40 pm on January 16, 2024 in ROCKVILLE, MD 20850.

**Get More Out of USPS Tracking:**
USPS Tracking Plus®

# Exhibit 5

Offices of Ronald S. Canter, LLC.
oe Street, Suite 104
Maryland 20850

Azim Transportation Inc.
530 Jason Drive
Southampton, PA 18966

-R-T-S-    189661994-1N       02/02/2

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER





Retail

RDC 99

18966

U.S. POSTAGE PAID
FCM LG ENV
ROCKVILLE, MD 20850
JAN 10, 2024

$2.55

R2304M113974-22

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Pennsylvania

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION (doing business as U.S. BANK EQUIPMENT FINANCE _____ v. *Plaintiff(s)* AZIM TRANSPORTATION, INC. AND AZIM MURADOV _____ *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No.  23-3023 |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

RONALD S. CANTER
THE LAW OFFICES OF
RONALD S. CANTER
LLC
200A MONROE ST STE
104
ROCKVILLE, MD 20850

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  8/7/23

S/John Arrow

*Signature of Clerk or Deputy Clerk*

George Wylesol, Clerk of Court
U.S. District Court, Eastern District of PA

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No 23-cv-3023

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):* _____

_____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

U.S. BANK EQUIPMENT FINANCE,  )
a division of U.S. BANK NATIONAL  )
ASSOCIATION,  )
         )
    Plaintiff,    )  Case No. 2:23-cv-03023-KNS
         )
v.          )
         )
AZIM TRANSPORTATION, INC.  )
AND AZIM MURADOV    )
         )
    Defendants.  )

### ORDER

AND NOW, this 5th day of January 2024, upon consideration of Plaintiff's Motion for a Second Extension of Time for Leave to Serve Defendants by Alternate Service and any response thereto, and for good cause having been shown, the Motion is hereby **GRANTED**, as follows:

1. Plaintiff shall have a 60-day extension to serve Defendant, through and until **March 5, 2024,** to effectuate service on Defendants; and

2. Plaintiff is granted leave to effectuate service on Defendants via:

(i) Certified and Regular U.S. Mail at 530 Jason Drive, Southampton, Pennsylvania, PA 18966;

(ii) posting a copy of the Summons and Complaint at 530 Jason Drive, Southampton, Pennsylvania, PA 18966; and

(iii) publication in *The Legal Intelligencer* and *The Philadelphia Inquirer* in compliance with Pa. Rule 430(a).

            _____
            Judge, United States District Court for the
            Eastern District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION<br>d/b/a U.S. BANK EQUIPMENT FINANCE, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| AZIM TRANSPORTATION, INC. | ) | |
| AND AZIM MURADOV | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE ("U.S. Bank"), by and through counsel, for its Complaint against Defendants AZIM TRANSPORTATION INC. ("ATI") and AZIM MURADOV ("Muradov") (collectively the "Defendants"), states as follows:

## PARTIES

1.     U.S. Bank is a national bank organized under the laws of the United States, with its principal place of business in Minneapolis, Minnesota. U.S. Bank maintains its charter in the State of Ohio, and its main office is located in Cincinnati, Ohio.

2.     ATI is a corporation organized under the laws of the Commonwealth of Pennsylvania. ATI's principal place of business is located at 530 Jason Drive, Southampton, PA 18966.

3.     Upon information and belief, Muradov is a citizen of the Commonwealth of Pennsylvania who is domiciled at 165 Kenton Dr., Langhorne, PA 19047.

## JURISDICTION AND VENUE

4.     Subject matter jurisdiction is appropriate in this Court pursuant 28 U.S.C. § 1332(a)(1) insomuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1)-(2) insomuch as Muradov resides in this judicial district and the property that is the subject of this Complaint is located in this judicial district.

## BACKGROUND

6.     On or about December 20, 2021, non-party BMO Harris Bank, N.A. ("BMO"), as lender, and ATI, as debtor, entered into Loan Security Agreement No. xxxxxx7001, which was re-numbered for accounting purposes by U.S. Bank to Agreement No. xxx-xxx2769-000, (the "Agreement") for the financing of one (1) 2018 Cascadia Freightliner Trucks with VIN 3AKJHHDR9JSHD9741 and one (1) 2019 Cascadia Freightliner Trucks with VIN 3AKJHHDR9KSJX0781 (the "Trucks"). A true and correct copy of the Agreement is attached hereto as Exhibit 1.

7.     Pursuant to the Agreement, ATI granted BMO a first priority security interest in the Trucks. *See* Exhibit 1, ¶ 2.1.

8.     Pursuant to the Agreement, Azim agreed to make forty-eight (48) consecutive monthly payments of $5,614.30. *See* Exhibit 1.

9.     To induce BMO to enter into the Agreement, Muradov executed a Continuing Guaranty in which Muradov personally guaranteed the full and prompt payment and performance of all ATI's obligations under the Agreement (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit 2.

10.     Also on December 20, 2021, ATI executed a Delivery and Acceptance Certificate under which ATI deemed the Trucks in satisfactory condition and agreed ATI's obligations and liabilities to BMO were absolute and unconditional. See Exhibit 1.

11.     BMO perfected its security interest in the Trucks by recording its lien on the titles of the Trucks. A true and correct copy of the titles for the Trucks are attached hereto as Group Exhibit 3.

12.     On May 23, 2022, BMO executed a Specification of Assigned Interest as well as a Titling Agency Agreement and assigned all its rights, title, and interest in the Agreement and the Trucks to U.S. Bank pursuant to a Portfolio Purchase and Sale Agreement between BMO and U.S. Bank dated December 22, 2017. A true and correct copy of the Specification of Assigned Interest and the Titling Agency Agreement is attached hereto as Exhibit 4.

13.     ATI failed to make all payments due under the Agreement, including the payment due on September 4, 2022 and all payments thereafter.

14.     Muradov failed to make payments pursuant to the Guaranty.

15.     U.S. Bank demanded return of the Trucks and payment of the remaining amounts due from ATI under the Agreement, but ATI failed to make payment or return the Trucks.

16.     Failure to make timely payments constitutes an event of default under the Agreement and Guaranty. See Exhibit 1, ¶ 5.1 and Exhibit 2.

17.     As a result of the default under the Agreement, U.S. Bank is entitled to payment of the accelerated balance, discounted to the present value at the rate of two percent (2%) per annum, plus late fees, recovery of the Trucks, prejudgment interest at the rate of eighteen percent (18%) per annum, continuing to accrue until judgment is entered, plus attorneys' fees and costs pursuant to the Agreement. Exhibit 1, ¶¶5.2-5.3.

3

18.     The Agreement is to be construed under the laws of the State of Illinois. Exhibit 1, ¶ 7.6.

19.     U.S. Bank performed all of its obligations under the Agreement.

20.     As a proximate result of ATI's default, U.S. Bank suffered actual damages of $230,186.15.

**COUNT I—BREACH OF CONTRACT
AGAINST AZIM TRANSPORTATION INC.**

21.     U.S. Bank realleges and reasserts Paragraphs 1 through 20 of its Complaint as though fully set forth herein.

22.     ATI defaulted under the Agreement by failing to make payments when due.

23.     Due to ATI's default under the Agreement, ATI is indebted to U.S. Bank in the amount of $230,186.15, plus interest and attorneys' fees and costs.

WHEREFORE, U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE respectfully requests that the Court enter judgment in its favor and against AZIM TRANSPORTATION INC. in the amount of $230,186.15, plus prejudgment interest at the rate of eighteen percent (18%) per annum, and attorneys' fees and costs, and grant all other and further relief which this Court deems just.

**COUNT II – BREACH OF GUARANTY
AGAINST AZIM MURADOV**

24.     U.S. Bank realleges and reasserts Paragraphs 1 through 23 of its Complaint as though fully set forth herein.

25.     Muradov defaulted under the Guaranty by failing or refusing to make payments when due.

26.     Because of Muradov's default under the Guaranty, Muradov is indebted to U.S. Bank in the amount of $230,186.15, plus interest and attorneys' fees and costs.

WHEREFORE, U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE respectfully requests that this Court enter judgment in its favor and against Defendant AZIM MURADOV in the amount of $230,186.15, plus prejudgment interest at the rate of eighteen percent (18%) per annum, attorneys' fees and costs, and such other and further relief as this Court deems just.

Respectfully submitted,

THE LAW OFFICES OF RONALD S. CANTER, LLC

/s/ Ronald S. Canter
Ronald S. Canter, Esq., #94000
PA Bar #94000
200A Monroe Street, Suite 104
Rockville, Maryland 20850-4424
Telephone:   (301) 424-7490
Facsimile:   (301) 424-7470
E-Mail: rcanter@roncanterllc.com
**Counsel for Plaintiff,**
**U.S. Bank National Association**
**d/b/a U.S. Bank Equipment Finance**

5

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

U.S. Bank Equipment Finance, a division of U.S. Bank National Association

**DEFENDANTS**

Azim Transportation, Inc., and Azim Muradov

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ronald S. Canter, Esq., The Law Offices of Ronald S. Canter, LLC
200A Monroe Street, Suite 104, Rockville, MD 20850
(301) 424-7490

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation - Transfer
☐ 8  Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Equipment Finance Agreement

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
230,186.15

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
08/07/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Ronald S. Canter

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Case 2:23-cv-03023   Document 1-2   Filed 08/07/23   Page 1 of 5

**BMO** Ⓜ | Transportation Finance

EXHIBIT
1

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("**Debtor**"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "**Lender**") under the terms and provisions of this agreement (this "**Agreement**") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "**Equipment**"):

| Year | Manufacturer | Model | Description | Serial Number |
|------|--------------|-------|-------------|---------------|
| 2018 | FREIGHTLINER | CASCADIA-SERIES | CASCADIA-SERIES: CA12564SLP 125"BBC CONV CAB W/72"RR SLPR TRACTOR 6X4 | 3AKJHHDR9JSHD9741 |
| 2019 | FREIGHTLINER | CASCADIA-SERIES | CASCADIA-SERIES: CA12564SLP 125"BBC CONV CAB W/72"RR SLPR TRACTOR 6X4 | 3AKJHHDR9KSJX0781 |

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $269,486.40 in 48 installments as follows:

(a) $5,614.30 on FEBRUARY 4, 2022 and a like sum on the like date of each month thereafter until fully paid;

(b) in irregular installments as follows:

| # of Payments | Payment Amount | Payment Date |
|---------------|----------------|--------------|

provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 9.79% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $850.00 equating to an annual percentage rate of 9.95% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Amount | Payee (Name and Address) |
|--------|--------------------------|
| $220,710.00 | PTG OF IDAHO LLC |
| | 541 ARLEN DR |
| | JEROME, ID 83338 |

Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

## 1.0 THE EQUIPMENT

**1.1 Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

**1.2 Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; from time to time, Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business location where the Equipment is indicated immediately below Debtor's signature and will not be removed from said provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

**1.3 Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser

Page 1 of 5 of Loan and Security Agreement dated DECEMBER 20, 2021 between AZIM TRANSPORTATION INC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax - ID-PPP
1.15T  12/2020
Doc Request: ████████7001
PRICINGENGINE 3047789

ORIGINAL FOR BMO HARRIS BANK

amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4    Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

**2.0    SECURITY INTEREST**

**2.1    Security Interest.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("**Liabilities**"). For the purposes of this Agreement, an "**Affiliate**" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2    Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3    Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

**3.0    ACCOUNT MANAGEMENT AND PAYMENT PROCESSING**

**3.1    Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2    Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("**Debit Transactions**"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3    Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4    Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depository institution because of such return and an additional handling charge in the amount of $25, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5    Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "**Entity**"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor, Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor, Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of such information made by Lender, or any Entity requested to release such information to Lender.**

**3.6    Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "**Interest Amount**") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged or received in connection with such indebtedness.

**4.0    PERFORMANCE BY LENDER**

**4.1    Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with

Page 2 of 5 of Loan and Security Agreement dated DECEMBER 20, 2021 between AZIM TRANSPORTATION INC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax - ID-PPP
1.1ST  12/2020
Doc Request :          7001
PRICINGENGINE 3047789

ORIGINAL FOR BMO HARRIS BANK

interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

**4.2     Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN-FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0     DEFAULT AND REMEDIES**

**5.1     Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "**Governmental Authority**"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission on any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; or (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein.

**5.2     Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

**5.3     Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0     PREPAYMENT**

**6.1     Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("**Excess Remittances**") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "**Effective Reschedule Date**") calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender permits Debtor to make a partial prepayment pursuant to clause (b)(ii) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

**6.2     Prepayment in Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "**Effective Prepayment Date**"). If the prepayment is made prior to the last twelve months of the contract (as originally scheduled or if extended, as extended), Debtor shall pay a prepayment fee equal to the lesser of (a) **$0.00**, or (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

**7.0     ASSIGNMENT AND GENERAL PROVISIONS**

**7.1     Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked "ORIGINAL FOR BMO HARRIS BANK" which is delivered to and held by Lender.

Page 3 of 5 of Loan and Security Agreement dated DECEMBER 20, 2021 between AZIM TRANSPORTATION INC (Debtor) and BMO HARRIS BANK N.A. (Lender),
621700 - Fund off fax - ID-PPP
1.15T  12/2020
Doc Request :                    7001
PRICINGENGINE 3047789

ORIGINAL FOR BMO HARRIS BANK

**7.2    Assignment and Waiver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3    General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement.

**7.4    Additional Covenants and Oral Agreement.** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**7.5    Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT, LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6    Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in Cook County, Illinois, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; provided, however, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7    Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an "Instrument") will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by us in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You agree that we may convert any Instrument you sign manually into an electronic record and store it in a document management system designated by us, and you hereby agree to adopt the electronic image of your manual signature as your valid and binding electronic signature. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), the resulting electronic Instrument shall be the single authoritative copy (as that term is used in the applicable Uniform Commercial Code) and no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or digital means or used electronic or other means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature.

Page 4 of 5 of Loan and Security Agreement dated DECEMBER 20, 2021 between AZIM TRANSPORTATION INC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax - ID-PPP
1.15T  12/2020
Doc Request ▓▓▓▓▓7001
PRICINGENGINE 3047789

ORIGINAL FOR BMO HARRIS BANK

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH BANK

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number. For businesses, we will ask for the business name, street address and tax identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT
(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On DECEMBER 20, 2021, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

Dated: **DECEMBER 20, 2021**

Lender:  BMO HARRIS BANK N.A.

By: _____

Name: Jean L. Dieu

Title:  AUTHORIZED SIGNER

_____300 E. JOHN CARPENTER FREEWAY_____
(Street Address)

_____IRVING, TEXAS 75062-2712_____
(City, State and Zip Code)

Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.

Debtor:  AZIM TRANSPORTATION INC

By: _____

Name: **AZIM MURADOV**

Title: **PRESIDENT**

State of Organization:  PA

Principal Residence/Chief Executive Office/Place of Business:
_____530 JASON DR._____
(Street Address)
_____SOUTHAMPTON, PA 18966_____
(City, State and Zip Code)

Billing/Invoice Address:

_____

_____
(Address)

_____
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

_____530 JASON DR._____
(Equipment Street)
_____SOUTHAMPTON, BUCKS, PA 18966_____
(Equipment City, County, State, and Zip)

Page 5 of 5 of Loan and Security Agreement dated DECEMBER 20, 2021 between AZIM TRANSPORTATION INC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax - ID-PPP
1.15T  12/2020
Doc Request #: ▓▓▓7001
PRICINGENGINE 3047789

ORIGINAL FOR BMO HARRIS BANK

## CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors") jointly and severally and in solido, hereby unconditionally guarantee to BMO HARRIS BANK N.A. and its affiliates, together with the respective successors, endorsees and assigns of each of the foregoing (collectively called "Bank") that **AZIM TRANSPORTATION INC** (the Company), whose address is **530 JASON DR., SOUTHAMPTON, PA 18966** shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Bank, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Bank (all of which liabilities, obligations and indebtedness are herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of payment and not of collectability. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments, agreements or chattel paper related thereto (collectively called "Agreements") or any security or collateral there for (collectively called "Security") or the pursuit by Bank of any rights or remedies which it now has or may hereafter have. If the Company fails to pay the Indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Bank by reason of the Company's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Bank to (i) proceed against the Company by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Bank may have against the Company, any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that: this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a Guarantor or surety, or by the death of any Guarantor; the records of Bank shall be received as conclusive evidence of the amount of the Indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Bank, with or without joinder of the Company or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which the Company may have against Bank, other than full payment of the Indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced.

Each Guarantor agrees to provide promptly to Bank such financial statements and other financial records and information respecting Guarantor as Bank may from time to time request. Each Guarantor authorizes Bank, throughout the term of this Guaranty, to investigate or make inquiries of creditors or any other persons and credit bureaus regarding Guarantor (including equity holders of Guarantor), and provide to creditors or any other persons any financial, credit or other information regarding or relating to Guarantor, whether supplied by Guarantor to Bank or otherwise obtained by Bank.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE COMPANY'S CONDITION OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT BANK HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST THE COMPANY THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF BANK AGAINST THE COMPANY OR ANY SECURITY WHICH BANK NOW HAS OR HEREAFTER ACQUIRES; WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Bank a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Bank to the Company after its receipt of such notice, but such notice shall not affect the obligations of the guarantors hereunder as to any and all indebtedness existing at the time such notice is received or incurred by the Company within thirty (30) days thereafter. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of extensions of credit given by Bank to the Company from time to time; (ii) presentment, demand, protest, and notice of non-payment or protest as to any note or other evidence of Indebtedness signed, accepted, endorsed or assigned to Bank by the Company; (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Bank may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder; (a) renew, extend or refinance any part or all of the Indebtedness of the Company or any Indebtedness of its customers, or of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the Indebtedness and apply such payments to any part of the Indebtedness; (c) settle, release (by operation of law or otherwise), compromise, collect or liquidate, in any manner, any of the Indebtedness, any Security, or any Indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Bank by law or agreement even if the exercise thereof may affect, modify or eliminate any rights or remedies which a Guarantor may have against the Company. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Bank shall not be stopped from exercising any rights hereunder, notwithstanding (i) Bank waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any release of, or failure on the part of Bank to perfect any security interest in or foreclose, proceed against, or exhaust, any Security; or (iii) Bank failure to take new, additional or substitute security or collateral for the Indebtedness.

Each Guarantor agrees that Bank may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Bank's office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Bank. All rights and remedies of Bank are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted here from, but shall not invalidate the remaining terms and provisions hereof.

**Execution and Transmission of Documentation.** This Guaranty and any schedules, exhibits, annexes or related instruments (each an "**Instrument**") will be created and evidenced as follows: (i) Bank will deliver to Guarantors an electronic or paper version of each Instrument; (ii) each Guarantor will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Bank in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to Bank by electronic, facsimile or other means; (iii) Bank will sign (electronically, digitally or manually, at its option) each signature page (if the Instrument requires Bank's signature); and (iv) Bank will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. Each Guarantor agrees that Bank may convert any Instrument signed manually into an electronic record and store it in a document management system designated by Bank, and each Guarantor hereby agrees to adopt the electronic image of its manual signature as its valid and binding electronic signature. Each Guarantor hereby represents and warrants that it has not modified the Instrument sent to it for signature. Upon a Guarantor's one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, Bank will make the same available to such Guarantor by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by Guarantors, and Bank may (at its option) retain only a copy of such Instrument and dispose of the version containing Guarantors' manual signatures. Guarantors and Bank intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument, and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), the resulting electronic Instrument shall be the single authoritative copy (as that term is used in the applicable Uniform Commercial Code) and no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. Each Guarantor agrees not to raise as a defense to the enforcement of any Instrument that it or any other Guarantor executed such Instrument by electronic or digital means or used electronic or other means to transmit its signature on such Instrument. Notwithstanding anything to the contrary herein, Bank reserves the right to require Guarantors to sign any Instrument manually and to deliver to Bank an original of such Instrument containing Guarantors' manual signatures.

This Guaranty is subject to and governed by the laws of the State of Illinois (without regard to the conflicts of law principles of such State), regardless of the location of Guarantor or the Company.

GUARANTOR REPRESENTS THAT GUARANTOR IS A(N) **OWNER** OF OR IN THE COMPANY.

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty on **DECEMBER 20, 2021**.

| Witness: | _____ | Guarantor: | **AZIM MURADOV** | (L.S.) |
| Witness: | _____ | By: | _____ | Title: | **INDIVIDUAL** |
| | | Address: | **530 JASON ST, SOUTHAMPTON, PA 18966** | |

620861 - Fund off fax
1.8T 12/2020
Doc Request ███7001

1 of 1

**EXHIBIT 2**

**EXHIBIT 3**

# COMMONWEALTH OF PENNSYLVANIA

## CERTIFICATE OF TITLE FOR A VEHICLE

2,512

FUEL TYPE: DIESEL

22048824500060-001

| 3AKJHHDR9KSJX0781 | 2019 | FREIGHTLINER | 84351043901 AZ |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| TT | 0 | UT | 2/17/22 | 485000 | 0 |
|---|---|---|---|---|---|
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROCD. DATE | ODOM. MILES | ODOM. STATUS |

| 2/17/22 | 2/17/22 | 15,000 | 80,000 | 0 |
|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
O = ORIGINALLY MFGD. FOR NON-U.S. DISTRIBUTION
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
P = IS/WAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
W = FLOOD VEHICLE
X = IS/WAS A TAXI

REGISTERED OWNER(S)

AZIM TRANSPORTATION INC
530 JASON DR
SOUTHAMPTON PA 18966

FIRST LIEN FAVOR OF:

BMO HARRIS BANK NA

SECOND LIEN FAVOR OF:

FIRST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

SECOND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE



**pennsylvania**
DEPARTMENT OF TRANSPORTATION

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

**YASSMIN GRAMIAN P.E.**
Secretary of Transportation

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

SUBSCRIBED AND SWORN TO BEFORE ME: MO. DAY YEAR

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

SIGNATURE OF PERSON ADMINISTERING OATH

SIGN IN PRESENCE OF A NOTARY

IF NO LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY                STATE          ZIP

The undersigned hereby makes application for Certificate of Title to the vehicle described above, subject to the encumbrances and other legal claims set forth here.

IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

2ND LIENHOLDER NAME

STREET

SIGNATURE OF CO-APPLICANT/TITLE OF AUTHORIZED SIGNER

CITY                STATE          ZIP

STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

83971194

**(TYPE OR PRINT)** Certificate of Title must be submitted within 20 days, unless the purchaser is a registered dealer holding the vehicle for resale.

**WARNING** – FEDERAL AND STATE LAWS REQUIRE THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES OR IMPRISONMENT.

**A. ASSIGNMENT OF TITLE** – Registered dealers must complete Forms MV-27A or MV-27B as required by law. If purchaser is NOT a registered dealer, Section D on the front of this form must be completed.

I/We certify, to the best of my/our knowledge that the odometer reading is _____ TENTHS _____ ✕ miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:

☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage WARNING: Odometer discrepancy

I/We further certify that the vehicle is free of any encumbrance and that the ownership is hereby transferred to the person(s) or the dealer listed.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. _____ DAY _____ YEAR _____

SIGNATURE OF PERSON ADMINISTERING OATH

STAMP OR SEAL

PURCHASER OR FULL BUSINESS NAME — LAST / FIRST / MIDDLE NAME
CO-PURCHASER
STREET ADDRESS
CITY
STATE / ZIP / PURCHASE PRICE OR DIN

PURCHASER SIGNATURE

CO-PURCHASER SIGNATURE

PURCHASER AND/OR CO-PURCHASER MUST HANDPRINT NAME HERE

SIGNATURE OF SELLER

SIGNATURE OF CO-SELLER

SELLER AND/OR CO-SELLER MUST HANDPRINT NAME HERE

**B. RE-ASSIGNMENT OF TITLE BY REGISTERED DEALER** — If purchaser listed in Block A is NOT a registered dealer Section D on the front of this form must be completed.

I/We certify, to the best of my/our knowledge that the odometer reading is _____ TENTHS _____ ✕ miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:

☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage WARNING: Odometer discrepancy

I/We further certify that the vehicle is free of any encumbrance and that the ownership is hereby transferred to the person(s) or the dealer listed.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. _____ DAY _____ YEAR _____

SIGNATURE OF PERSON ADMINISTERING OATH

STAMP OR SEAL

PURCHASER OR FULL BUSINESS NAME — LAST / FIRST / MIDDLE NAME
CO-PURCHASER
STREET ADDRESS
CITY
STATE / ZIP / PURCHASE PRICE OR DIN

PURCHASER SIGNATURE

CO-PURCHASER SIGNATURE

PURCHASER AND/OR CO-PURCHASER MUST HANDPRINT NAME HERE

SIGNATURE OF SELLER

SELLER MUST HANDPRINT NAME HERE

**RE-ASSIGNMENT OF TITLE BY REGISTERED DEALER** — If purchaser is NOT a registered dealer Section D on the front of this form must be completed.

I/We certify, to the best of my/our knowledge that the odometer reading is _____ TENTHS _____ ✕ miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:

☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage WARNING: Odometer discrepancy

I/We further certify that the vehicle is free of any encumbrance and that the ownership is hereby transferred to the person(s) or the dealer listed.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. _____ DAY _____ YEAR _____

SIGNATURE OF PERSON ADMINISTERING OATH

STAMP OR SEAL

PURCHASER OR FULL BUSINESS NAME — LAST / FIRST / MIDDLE NAME
CO-PURCHASER
STREET ADDRESS
CITY
STATE / ZIP / PURCHASE PRICE OR DIN

PURCHASER SIGNATURE

CO-PURCHASER SIGNATURE

PURCHASER AND/OR CO-PURCHASER MUST HANDPRINT NAME HERE

SIGNATURE OF SELLER

SELLER MUST HANDPRINT NAME HERE

**RE-ASSIGNMENT OF TITLE BY REGISTERED DEALER** — If purchaser is NOT a registered dealer Section D on the front of this form must be completed.

I/We certify, to the best of my/our knowledge that the odometer reading is _____ TENTHS _____ ✕ miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:

☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage WARNING: Odometer discrepancy

I/We further certify that the vehicle is free of any encumbrance and that the ownership is hereby transferred to the person(s) or the dealer listed.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. _____ DAY _____ YEAR _____

SIGNATURE OF PERSON ADMINISTERING OATH

STAMP OR SEAL

PURCHASER OR FULL BUSINESS NAME — LAST / FIRST / MIDDLE NAME
CO-PURCHASER
STREET ADDRESS
CITY
STATE / ZIP / PURCHASE PRICE OR DIN

PURCHASER SIGNATURE

CO-PURCHASER SIGNATURE

PURCHASER AND/OR CO-PURCHASER MUST HANDPRINT NAME HERE

SIGNATURE OF SELLER

SELLER MUST HANDPRINT NAME HERE

MV-4 (10-2015)

**C.** ☐ CHECK HERE IF APPLYING FOR A DEALER TITLE AND COMPLETE SECTION D. TITLING FEES $ _____

An employee of an issuing agent licensed as a vehicle dealer by the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons may verify a person's signature in lieu of notarization.

3AKJHHDR9JSHD9741
Case 2:23-cv-03023-KNS    Document 13-1    Filed 03/06/24    Page 35 of 56
DocuSign Envelope ID: 1AA5D4FD-6D29-47DA-B0ED-3O982EC0B769
Case 2:23-cv-03023    Document 1-4    Filed 08/07/23    Page 3 of 5

Deal # **DE-50138**
Customer # PROS-018998



# IDAHO
# REASSIGNMENT / DISCLOSURE
## THIS FORM MUST BE USED WITH TITLES THAT HAVE NO SPACE
## FOR REASSIGNMENTS OR ODOMETER DISCLOSURES

* FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP *
* FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT *

| Vehicle Identification Number (VIN) | Make | Year | Model | Body Type |
|---|---|---|---|---|
| 3AKJHHDR9JSHD9741 | FREIGHTLINER | 2018 | PT126SLP | Conventional Sleeper Truck |

## SECTION 1 - DEALER REASSIGNMENT ONLY
The undersigned dealer hereby certifies that the vehicle described in this document has been transferred to the purchaser listed below.

ODOMETER READING  550879  DATE  12/20/2021
Reading is actual unless indicated otherwise. NO TENTHS
☐ In Excess of Mechanical Limits    ☐ Exempt
☐ Not Actual - Warning Odometer Discrepancy    ☐ No Device

PURCHASER'S PRINTED NAME(S)
∗ AZIM TRANSPORTATION INC

DEALERSHIP NAME                DEALER NUMBER
PREMIER TRUCK - IDAHO FALLS

ADDRESS        CITY        STATE        ZIP
530 JASON DR  SOUTHAMPTON PA        18966-4056

ADDRESS
6413 S DOUG ANDRUS DR.

I am aware of the odometer certification made by the seller.
X ─DocuSigned by:
    *Azim Mundan*
2nd PURCHASER'S SIGNATURE (or representative's printed name)
X

CITY        STATE        ZIP
IDAHO FALLS        ID        83402

LIENHOLDER'S NAME
BMO HARRIS BANK N.A.

DEALER/AGENT'S PRINTED NAME
Devin Buttars

I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby release my interest and transfer ownership to the named purchaser.
DEALER/AGENT'S SIGNATURE:
X ─DocuSigned by:
    *Devin Buttars*
─6A40F0F40E884D5...

ADDRESS
PO BOX 35707

CITY        STATE        ZIP
BILLINGS        MT        59107

## SECTION 2 - DEALER REASSIGNMENT ONLY
The undersigned dealer hereby certifies that the vehicle described in this document has been transferred to the purchaser listed below.

ODOMETER READING        DATE
Reading is actual unless indicated otherwise. NO TENTHS
☐ In Excess of Mechanical Limits    ☐ Exempt
☐ Not Actual - Warning Odometer Discrepancy    ☐ No Device

PURCHASER'S PRINTED NAME(S)
∗
∗

DEALERSHIP NAME                DEALER NUMBER

ADDRESS        CITY        STATE        ZIP

ADDRESS

I am aware of the odometer certification made by the seller.
X

CITY        STATE        ZIP

2nd PURCHASER'S SIGNATURE (or representative's printed name)
X

DEALER/AGENT'S PRINTED NAME

LIENHOLDER'S NAME

I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby release my interest and transfer ownership to the named purchaser.
DEALER/AGENT'S SIGNATURE:
X

ADDRESS

CITY        STATE        ZIP

## SECTION 3 - DEALER REASSIGNMENT ONLY
The undersigned dealer hereby certifies that the vehicle described in this document has been transferred to the purchaser listed below.

ODOMETER READING        DATE  12/20/2021
Reading is actual unless indicated otherwise. NO TENTHS
☐ In Excess of Mechanical Limits    ☐ Exempt
☐ Not Actual - Warning Odometer Discrepancy    ☐ No Device

PURCHASER'S PRINTED NAME(S)
∗

DEALERSHIP NAME                DEALER NUMBER

ADDRESS        CITY        STATE        ZIP

ADDRESS

I am aware of the odometer certification made by the seller.
X

CITY        STATE        ZIP

2nd PURCHASER'S SIGNATURE (or representative's printed name)
X

DEALER/AGENT'S PRINTED NAME

LIENHOLDER'S NAME

I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby release my interest and transfer ownership to the named purchaser.
DEALER/AGENT'S SIGNATURE:
X

ADDRESS

CITY        STATE        ZIP

**ORIGINAL WITH TITLE**

1115904

TC-AO30 **CERTIFICATE OF TITLE**

# Corrected Title



**Vehicle Type:** Truck       **Year:** 2018   **Make:** FRHT    **Model:** CASCADIA 126      **Body Style:** TR
**VIN/HIN:** 3AKJHHDR9JSHD9741
**Cylinders:** 6                **Fuel:** D                            **Odometer:** 0

**Title Number:** UT004296053

**Date Issued:** 06/25/2018

D L EVANS BANK
PO BOX 87
TWIN FALLS ID 83303-0087

**Owner Information:**
ELIASON RANCH TRUCKING LLC
1855 W MAIN ST
TREMONTON UT 84337-9360

**Lienholder Information:**
D L EVANS BANK
PO BOX 87
TWIN FALLS ID 83303-0087

**VEHICLE IS EXEMPT FROM ODOMETER REQUIREMENTS**

## Request For Lien Change
Complete this section. Send the title and required fee to the Division of Motor Vehicles. Please check one box.

☐ Issue a title free of liens            ☐ Issue a title showing the following as the NEW LIEN HOLDER

| LIEN RELEASE - Signature of lien holder (releasing interest) | Vehicle owner's signature requesting lien change |
|---|---|
| X | |
| Title of signer _Vice President_ | New lien holder's name |
| Date _9/23/2021_ | Address |
| | City            State    ZIP Code |



D.L. Evans Bank
312 W. Main
Tremonton, UT 84337

**Division of Motor Vehicles**
**UTAH STATE TAX COMMISSION**
210 North 1950 West
Salt Lake City, Utah  84134



TC-127 Rev. 01/13 CDR

C 1634354

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**INSTRUCTIONS TO SELLER:**

Type or print the information.
NOTARY PUBLIC IS NO LONGER NEEDED. KEEP A COPY.

**INSTRUCTIONS TO BUYER:**

Type or print the information. Warning: DO NOT SIGN IF ODOMETER DISCLOSURE IS NOT COMPLETE.

## C 1634354

### A  Assignment Of Title By Registered Owner

**Odometer Disclosure - Required**

Enter odometer miles (no tenths)

☐ Reflects ACTUAL mileage

☐ Reflects the mileage IN EXCESS of the odometer mechanical limits

☐ is not the actual mileage for this vehicle WARNING - ODOMETER DISCREPANCY

**Sales/Purchase Price - Required**

Date of Sale

Sale Price $

**SELLER**

Print name of seller
Elison Ranch Trucking

Print name of authorized agent selling vehicle (if different from seller name)

Current address of seller (street, city, state and ZIP code)
1855 W. Main St. Tremonton, UT 84337

As owner, I hereby transfer all rights, title and interest to this vehicle to the new owner named below. I certify, to the best of my knowledge, that the title is free and clear of encumbrances, except the lien to the new lien holder, if any. I certify that the odometer and sales information provided is correct. Federal and state law require that the owner provide the mileage upon transfer of ownership of a vehicle. Failure to complete a statement or by providing false statements, may result in fines and/or imprisonment.  KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.

Signature of seller (and joint seller)
X Elison Ranch Trucking by Kelly Kel for premier Truck group ppca

Date of Sale

**BUYER**

Print name of new owner
Premier Truck-Idaho Falls

Print name of new lien holder

Street Address
6415 S. Day Andrus Dr.

Street Address

City  Idaho Falls    State ID    ZIP Code 8402

City    State    ZIP code

Signature of buyer (new owner)
Kelly Kel

Signature of lien holder (releasing interest)
X

### B  Reassignment Of Title

**Odometer Disclosure - Required**

Enter odometer miles (no tenths)

☐ Reflects ACTUAL mileage

☐ Reflects the mileage IN EXCESS of the odometer mechanical limits

☐ is not the actual mileage for this vehicle WARNING - ODOMETER DISCREPANCY

**Sales/Purchase Price - Required**

Date of Sale

Sale Price $

**SELLER**

Print name of seller
Premier Truck-Idaho Falls

Print name of authorized agent selling vehicle (if different from seller name)

Current address of seller (street, city, state and ZIP code)
6413 S. Day Andrus Dr. Idaho Falls, ID 8412

As owner, I hereby transfer all rights, title and interest to this vehicle to the new owner named below. I certify, to the best of my knowledge, that the title is free and clear of encumbrances, except the lien to the new lien holder, if any. I certify that the odometer and sales information provided is correct. Federal and state law require that the owner provide the mileage upon transfer of ownership of a vehicle. Failure to complete a statement or by providing false statements, may result in fines and/or imprisonment.  KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.

Signature of seller (and joint seller)
X

Date of Sale

**BUYER**

Print name of new owner
Azim Transportation Inc

Print name of new lien holder
Duo Palms Bank

Street Address
350 Jason Dr.

Street Address
PO Box 35707

City  Southampton    State PA    ZIP code 18966

City  Billings    State MT    ZIP code 59107

Signature of buyer (new owner)
X

Signature of lien holder (releasing interest)
X

**Utah Code 41-1a-701 requires the owner to remove the license plates when vehicle is sold or disposed.**

**EXHIBIT**

**4**

## SPECIFICATION OF ASSIGNED INTEREST

Executed pursuant to the Portfolio Purchase and Sale Agreement dated as of the 22nd day of December, 2017 (the "Agreement"), by and between BMO HARRIS BANK N.A., as Seller, and U.S. BANK EQUIPMENT FINANCE, a division of U.S. Bank National Association, as Purchaser.

This Specification is dated and effective as of the date set forth below and incorporates the terms and conditions of the Agreement.

1. The Accounts, Customers, remaining payments due under each Account and certain other information relating to each Account are set forth on Annex A hereto.

2. Consideration: ▮▮▮▮▮▮▮

3. Fiscal Agency: Seller shall act as Purchaser's fiscal agent under the terms of the Agreement.

4. Discount Rate: as set forth in Annex A attached hereto and made a part hereof.

5. Residual: as set forth in Annex A attached hereto and made a part hereof.

6. Payment Date: the 22nd day of each month (or the next business day if the 22nd is not a business day).


## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Date of Execution: May _23_, 2022

U.S. BANK EQUIPMENT FINANCE, a division of U.S.
Bank National Association
Purchaser

By: _____
Name: _Jeff Sherman_____
Title: _Vice President_____

BMO HARRIS BANK N.A.
Seller

By: _____
Name: _____Michael Ocampo_____
Title: _____Senior Vice President_____

# TITLING AGENCY AGREEMENT

THIS TITLING AGENCY AGREEMENT (the "Agreement") is dated as of May 23, 2022 by and between U. S. BANK EQUIPMENT FINANCE, a division of U.S. Bank National Association ("Lender"), and BMO HARRIS BANK N.A. ("Agent").

WHEREAS, pursuant to a Specification of Assigned Interest dated the date hereof, which is being executed pursuant to that certain Portfolio Purchase and Sale Agreement dated as of December 22nd, 2017 (the "Purchase Agreement"), between Lender and Agent, Lender is purchasing from Agent Agent's right, title and interest in the secured loan transactions described therein (collectively, the "Accounts"), including but not limited to, Agent's interest in the vehicles described in the Accounts (the "Vehicles"); and

WHEREAS, the parties desire that Agent (or General Electric Capital Corporation, GE Capital Commercial Inc., and/or Transportation Truck and Trailer Solutions, LLC, as applicable, whose interest in the Vehicles was assigned to Agent) continue to be shown as the secured party or lienholder on the certificates of title to the Vehicles and to act as Lender's agent pursuant to the terms of this Agreement.

NOW THEREFORE, as an incident to the sale of Agent's interest in the Accounts and the Vehicles by Agent to Lender, and in consideration of the foregoing and of the mutual promises set forth herein, the parties agree as follows:

1.     Appointment as Agent.  Lender hereby appoints Agent as Lender's agent for the following limited purposes:  (i) to be named as, or serve as, the secured party or lienholder on the certificates of title relating to the Vehicles on behalf of Lender; (ii) to hold on behalf of Lender the original certificates of title or the lien certificates in the case of states that issue lien certificates with respect to the Vehicles; and (iii) to take any actions requested in writing by Lender solely relating to Agent's being named as, or serving as, the secured party or lienholder on the certificates of title relating to the Vehicles as agent for Lender, including but not limited to, upon the written request of Lender, assigning its interest as the secured party or lienholder to Lender or any designee of Lender.  Agent hereby agrees to conduct its agency as Lender shall direct and shall not take any action with respect to the certificates of title except as expressly directed by Lender in writing.  Lender hereby confers on Agent such powers as it possesses as are necessary for Agent to act as Lender's agent for being named as, or serving as, the lienholder or secured party on the certificates of title to the Vehicles.  The parties agree that this appointment is for the administrative convenience of the parties.  Agent undertakes to perform as agent on behalf of Lender such duties and only such duties as are specifically set forth herein and no implied covenants or obligations shall be read into this Agreement against Agent.  Agent has no legal or beneficial title to, ownership of or interest in any of the Vehicles.

2.     Acceptance of Appointment.  Agent hereby accepts its appointment as agent and agrees that Agent will be named as, or serve as, secured party or lienholder on the certificates of title only for the benefit of Lender and has no beneficial title to, ownership of or interest in the Vehicles.  Without the prior written consent or direction of Lender, Agent hereby agrees not to take any action that would encumber the Vehicles or convey any interest therein.

3.     Power of Attorney.  Lender hereby appoints Agent as its agent and attorney-in-fact to execute any and all documentation on behalf of Lender with respect to the certificates of title or registrations relating to the Vehicles.  Such appointment is specifically limited to the express terms of the foregoing sentence, is coupled with an interest and is irrevocable.

4.     No Fee; Costs.  Agent serves hereunder as agent without any fee.  Notwithstanding any other provisions of this Agreement, except as otherwise provided in the Purchase Agreement, Agent shall have no liability for any fees or taxes imposed on or in connection with the Vehicles or certificates of title and Lender shall be responsible for all reasonable out-of-pocket costs and expenses incurred by Agent from and after the date hereof to the extent relating to the agency created hereby and any actions taken by Agent hereunder (expressly excluding any out-of-pocket costs and expenses incurred in the ordinary course of business, overhead or as a result of Agent's gross negligence, willful misconduct or breach of the terms hereof), and, to the extent that any such out-of-pocket costs or

expenses are borne by Agent, Agent shall provide prior written notice to Lender of such costs and expenses and Lender shall promptly reimburse Agent therefor.

5.  Terms of Appointment. Unless (a) Agent and Lender mutually agree in writing to terminate Agent's agency hereunder, (b) Agent's duties as fiscal agent with respect to the Account relating to the pertinent Vehicles are terminated in accordance with the terms of the Purchase Agreement, or (c) Agent's duties as agent with respect to the Account relating to the pertinent Vehicles are terminated upon a breach by Agent of its obligations under this Agreement and Lender has notified Agent of its election to terminate Agent's agency with respect to such Account, Agent's appointment hereunder shall extend until the Account relating to the pertinent Vehicles has expired, been terminated or been paid in full.

6.  Indemnity. Lender hereby agrees to indemnify, defend and hold Agent harmless from and against any and all losses, damages, suits, claims, demands, actions, taxes, fees, expenses and other harms whatsoever ("Claims") that arise out of or are attributable to the undertakings contemplated in this Agreement, including, without limitation, any Claim by any local, state or federal governmental authority seeking to recover taxes, fees or other charges relating to the Vehicles and the certificates of title except (i) to the extent Agent is liable for such amounts as seller under the Purchase Agreement and (ii) to the extent arising from Agent's gross negligence, willful misconduct or breach of the terms hereof.

7.  Delivery of Documents. Agent hereby agrees, promptly upon receipt, to deliver to Assignee all notices or other communications received by Assignor with respect to the Vehicles. Promptly following (i) any request by Lender following a default by the Obligor under an Account relating to a Vehicle; and (ii) any termination of the agency created hereunder with respect to any Vehicle, Agent shall deliver to Lender the original certificate of title or lien certificate with respect to such Vehicle, together with such documents as may be required to permit Lender to reflect its interest therein.

8.  Miscellaneous.

(a)  Any provision of this Agreement that is unenforceable in whole or in part in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such unenforceability without invalidating any remaining part or other provision hereof and shall not be affected in any manner by reason of such unenforceability in any other jurisdiction. The validity and interpretation of this Agreement and the rights and obligations of the parties hereto shall be governed in all respects by the law of the State of New York without giving effect to the conflicts of laws provisions thereof.

(b)  The parties agree from time to time to execute and deliver such documents, notices and other instruments as may be necessary or appropriate to cause all monies, credit or other property to be paid, distributed or delivered to the other party or as may be desirable in obtaining the full benefits of this Agreement and the rights and powers herein granted.

(c)  EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES THEIR RIGHTS TO A TRIAL BY JURY WITH RESPECT TO THIS AGREEMENT.

(d)  This Agreement may be executed in multiple counterparts, each of which will constitute an original and all of which together constitute but one agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, Lender and Agent have duly executed and delivered this Agreement as of the day and year first written above.

U.S. BANK EQUIPMENT FINANCE,
a division of U.S. Bank National Association

By: _____

Name: John Sherman

Title: Vice President

BMO HARRIS BANK N.A.

By: _____

Name: Michael Ocampo

Title: Senior Vice President

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| Azim Transportation, Inc., and Azim Muradov | ) ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Azim Transportation, Inc.
530 Jason Drive
Southampton, PA 18966

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Ronald S. Canter, Esquire
The Law Offices of Ronald S. Canter, LLC
200A Monroe Street, Suite 104
Rockville, Maryland 20850

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____08/07/2023_____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION | ) ) ) ) |  |
|---|---|---|
| *Plaintiff(s)* | ) ) ) | Civil Action No. |
| v. | ) |  |
| Azim Transportation, Inc., and Azim Muradov | ) ) ) |  |
| *Defendant(s)* | ) ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Azim Muradov
165 Kenton Dr.
Langhorne, PA 19047

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Ronald S. Canter, Esquire
The Law Offices of Ronald S. Canter, LLC
200A Monroe Street, Suite 104
Rockville, Maryland 20850

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____08/07/2023_____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# Exhibit 6

The Law Offices of Ronald S. Canter, LLC
200A Monroe Street, Suite 104
Rockville, Maryland 20850

GM:f

NIXIE                1S2    48 1
RETURN TO SENDER
NOT DELIVERABLE TO ADDRESS
UNABLE TO FORWARD
BC: 20850441444    2899046144-025B5

MANUAL PROC REQD

2020/15/24

Azim  Transportation  Inc.
530 Jason Drive
Southampton, PA 18966

Retail

U.S. POSTAGE PAID
FCM LG ENV
ROCKVILLE, MD 20850
JAN 10, 2024

RDC 99

18966

$2.55

R2304M113974-22

# Exhibit 7

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.     **2:23-CV-03023**

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for  **Azim Muradov**
was recieved by me on **1/10/2024:**

☐  I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐  I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐  I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of organization)*; or

☐  I returned the summons unexecuted because ; or

☒  Other *(specify)*    Posted per request

My fees are $ 0 for travel and $ 95.00 for services, for a total of **$ 95.00**.

I declare under penalty of perjury that this information is true.

Date:   1/11/24

_____
*Server's signature*

**Glenn DePretis**
*Printed name and title*

**8004 Hammond Rd
Cheltenham, PA 19012**

_____
*Server's address*

Additional information regarding attempted service, etc:




Tracking #: 0121935375

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  **2:23-CV-03023**

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for  **Azim Transpiration, Inc.**
was recieved by me on  **1/10/2024:**

☐  I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐  I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and
discretion who resides there, on , and mailed a copy to the individual's last known address; or

☒  I served the summons on , who is designated by law to accept service of process on behalf of **Azim Transpiration, Inc.**
at **530 Jason Dr, Southampton, PA 18966** on **01/11/2024 at 2:08 PM**; or

☐  I returned the summons unexecuted because ; or

☐  Other *(specify)*

My fees are $ 0 for travel and **$ 95.00** for services, for a total of **$ 95.00**.

I declare under penalty of perjury that this information is true.

Date:  **1/11/24**

_____
*Server's signature*

**Glenn DePretis**
*Printed name and title*

**8004 Hammond Rd**
**Cheltenham, PA 19012**

_____
*Server's address*

Additional information regarding attempted service, etc:

**Posted per Instructions**





# Exhibit 8



**LOCALiQ**

Erie Times-News | The Intelligencer
Bucks County Courier Times
The Daily American | Beaver County Times
Pocono Record | Burlington County Times

PO Box 630531 Cincinnati, OH 45263-0531

## PROOF OF PUBLICATION

Ronald S Canter
200A Monroe Street, Suite 104
Rockville MD 20850

**STATE OF PENNSYLVANIA, COUNTY OF BUCKS**

The Bucks County Courier Times, a newspaper of general
circulation, published and having its place of business at
Levittown, Bucks County, PA; that said newspaper was
established in 1910; that attached hereto is a facsimile of
the printed notice which is exactly as printed and published
in said newspaper issue dated on:

02/01/2024

That said newspaper was regularly issued and circulated on
those dates.

Sworn to and subscribed before on 02/01/2024

Legal Clerk

Notary, State of WI, County of Brown

My commision expires

| | |
|---|---|
| Publication Cost: | $347.31 |
| Order No: | 9777128 |
| Customer No: | 1343821 |
| PO #: | LSOM0054924 |

# of Copies:
0

### THIS IS NOT AN INVOICE!

*Please do not use this form for payment remittance.*

AMY KOKOTT
Notary Public
State of Wisconsin

Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### Case No. 2:23-cv-03023

U.S. BANK EQUIPMENT FINANCE,
a division of U.S. BANK NATIONAL ASSOCIATION,

Plaintiff,

v.

AZIM TRANSPORTATION, INC.
AND AZIM MURADOV

Defendants.

Parties: Plaintiff: U.S. Bank Equipment Finance
Defendant: Azim Transportation Inc. f/k/a Azim Trans Inc., a corporation
Defendant: Azim Muradov, an individual
Nature of Action: Civil Action Complaint for Breach of Contract

## NOTICE

**Attention: Defendants Azim Transportation Inc. f/k/a Azim Trans Inc., a corporation, and Azim Muradov, an individual**

**You have been sued in court.**

**If you wish to defend, you must enter a written appearance personally or by attorney and file your defenses or objections in writing with the court. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you without further notice for the relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
215-238-6333

February 1 2024
LSOM0054924

# Exhibit 9

# BUCKS COUNTY LAW REPORTER

Doylestown, PA

Owned and Published by the Bucks County Bar Association

STATE OF PENNSYLVANIA,
COUNTY OF BUCKS

**Maureen Serpico** being duly sworn according to law deposes and says that she is Editor of the Bucks County Law Reporter, the legal publication designated by the several courts of Bucks County, Pennsylvania, as the official newspaper for the publication of legal notices in Bucks County, Pennsylvania, which was established in 1951; that the printed notice, a copy of which is attached hereto was published in said paper on the following dates: —

February 8, 2024

that your deponent is not interested in the subject matter of the notice so published and that all allegations of this statement as to the time, place and character of the publication are true.

_____
Editor

Sworn to and subscribed
before me this
8th day of February,
A.D. 2024

_____

Commonwealth of Pennsylvania - Notary Seal
KRISTEN NORCROSS - Notary Public
Bucks County
My Commission Expires January 27, 2028
Commission Number 1364659

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CASE NO. 2:23-cv-03023
**U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION,** Plaintiff
v.
**AZIM TRANSPORTATION, INC. AND AZIM MURADOV,** Defendants
Parties: Plaintiff: U.S. Bank Equipment Finance; Defendant: Azim Transportation Inc. f/k/a Azim Trans Inc., a corporation; Defendant: Azim Muradov, an individual.
Nature of Action: Civil Action Complaint for Breach of Contract.
NOTICE
Attention: Defendants Azim Transportation Inc. f/k/a Azim Trans Inc., a corporation, and Azim Muradov, an individual.
You have been sued in court.
If you wish to defend, you must enter a written appearance personally or by attorney and file your defenses or objections in writing with the court. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you without further notice for the relief requested by the plaintiff. You may lose money or property or other rights important to you.
YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.
IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.
Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-6333

Feb. 8